LIBERTY HOMES, INC., Moduline International, Inc., and Commodore Home Systems, Inc., Plaintiffs-Appellants and Cross-Petitioners,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant-Respondent.

Supreme Court

*No. 82–2427. Argued September 4, 1986.—Decided March 9, 1987.*

(Also reported in 401 N.W.2d 805.)

369

For the plaintiffs-appellants and cross-petitioners there was a joint reply by *Edward F. Canfield, Mark S. Weiss* and *Casey, Scott & Canfield, P.C.*, Washington, D.C., and *Norman C. Anderson* and *Wheeler, Van Sickle, Anderson, Norman & Harvey, S.C.*, Madison, and oral argument by *Norman C. Anderson*.

For the defendant-respondent the cause was argued by *Bruce A. Olsen*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

BABLITCH, J.   Liberty Homes, Inc., Moduline International, Inc. and Commodore Home Systems, Inc. (Mobile Home Builders) seek review of a decision of the court of appeals, which upheld the validity of

Wis. Adm. Code, Sec. Ind. 14.03.[1] The circuit court had reached an identical conclusion. The Mobile Home Builders also challenge the methodology employed by the circuit court and court of appeals to determine whether the rule adopted by the agency was factually supported by the record. They urge this court not only to invalidate Sec. Ind. 14.03 but to reject the lower courts method of review and to articulate a different methodology for reviewing the factual basis of agency rules.

As fully explained below, the validity of the rule in this case is challenged on constitutional grounds. We adhere to the standard of review utilized by this court in prior constitutional due process challenges to agency rules. Hence, where there is a constitutional challenge to the factual basis of an administrative rule the court must decide whether the regulation adopted by the agency is reasonably related to a legitimate governmental objective.[2] *E.g., Josam Mfg. Co. v. State Board of Health,* 26 Wis. 2d 587, 603, 133 N.W.2d 301 (1965). To find that an agency rule is reasonably related to a legitimate governmental objective there must be facts of record which demonstrate a reasonable basis for the agency's rule. The court must undertake a thorough study of the record in order to determine whether the agency could reasonably have concluded that the rule chosen would effectuate the governmental objective it sought to implement. Apply-

---

[1] The rule has subsequently been renumbered and currently appears as Wis. Adm. Code Ch. ILHR 27. In this opinion it will be referred to, as it is by the parties, as Sec. Ind. 14.03.

[2] This standard is frequently referred to as the reasonableness test. *See, e.g.,* Comment, *The Standard of Review of Administrative Rules in Wisconsin,* 1982 Wis. L. Rev. 691.

ing this standard to the present case we conclude that Sec. Ind. 14.03 is valid.

Wisconsin Adm. Code Sec. Ind. 14.03 was adopted pursuant to secs. 101.92(1) and 101.94(2), Stats. 1981–82, which authorize the Department of Industry, Labor and Human Relations (DILHR) to "adopt, administer and enforce rules for the safe and sanitary design and construction of mobile homes ..." and to "establish, by rule, standards for the safe and sanitary design and construction of mobile homes. ..."

Section Ind. 14.03 provides that "[a]ll new mobile homes designed and constructed on or after the effective date of this rule and offered for retail sale in Wisconsin shall not exceed the chemical concentration in the ambient indoor air ..." of .4 parts per million (ppm) after sixty days from the date of manufacture. Section Ind. 14.03(1).

Section Ind. 14.03 provides that all tests performed by DILHR to determine the presence and concentration of formaldehyde shall be conducted in accordance with a prescribed test (hereinafter the NIOSH P & CAM 125 Test). Section Ind. 14.03(3). If DILHR determines by using the foregoing test that the formaldehyde level in the air of a mobile home, at any time up to two years after sale and occupancy, exceeds .4 ppm, the manufacturer is required, within 30 days, to lower the concentration to .4 ppm or less. Failure to take such corrective action subjects the manufacturer to potential criminal penalties. Section Ind. 14.03(1)(b), (7), (8), (9).

■ The Mobile Home Builders commenced this action pursuant to sec. 227.05(1), Stats.,[3] seeking a

---

[3]Effective April 22, 1986, sec. 227.05(1), Stats., was renum-

declaratory judgment holding the rule invalid. Section 227.05(1) authorizes judicial review of the validity of administrative rules exclusively by actions for declaratory judgment. The court must declare a rule invalid under three circumstances: 1) if it finds it violates constitutional provisions; 2) exceeds the statutory authority of the agency; or 3) was adopted without compliance with statutory rulemaking procedures. Section 227.05(4).

At the onset we must clarify two points which have been blurred in this litigation. They are: 1) whether this factual basis challenge is on constitutional or exceeding statutory authority grounds; and 2) whether the parties challenge the standard of review employed by the lower courts or the method the courts used to implement that standard of review.

This court has searched the original complaint, the petition for review and all the briefs for a clear articulation of the grounds for this challenge to the factual basis of Sec. Ind. 14.03. We have also reviewed the opinions of the courts below in this case to try and determine whether this is a constitutional attack, statutory authority challenge or both. Though neither the circuit court nor the court of appeals explicitly

bered sec. 227.40(1). In this opinion we will refer to the section by its prior section number, sec. 227.05, which provides in part:

"227.05 **Declaratory judgment proceedings.** (1) Except as provided in sub. (2), the exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane county.... The court shall render a declaratory judgment in such action only when it appears from the complaint and the supporting evidence that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff."

address the issue, it appears they considered the attack on the rule's factual basis a constitutional due process challenge.[4] In addition, there is language in the Mobile Home Builders' second amended complaint which suggests that in asserting the rule lacks adequate factual support, they intend a constitutional challenge to the rule.[5]

Thus, based on our review of the pleadings, briefs and lower court opinions we conclude the Mobile Home Builders' challenge that the rule lacks sufficient factual support is a constitutional substantive due process challenge.[6] *E.g., Nebbia v. New York,* 291

[4]The opening paragraph of the circuit court opinion is couched in constitutional due process terms as are two of its conclusions of law.

The court of appeals in a section of its opinion entitled "FACTUAL BASIS FOR RULE" cites a series of cases involving constitutional due process challenges to rules and employs the traditional standard of review used in constitutional challenges. *Liberty Homes v. DILHR,* No. 82–2427, opinion at 6 (Ct. App. July 18, 1985) ("rule's challenger must show by proof beyond a reasonable doubt that the rule does not bear a reasonable relationship to its purpose.")

[5]The Mobile Home Builders' second amended complaint alleges among other things that 1) the rule exceeds DILHR's statutory authority because it is not a design and construction standard and that 2) the rule violates their substantive due process rights because "[t]he alleged benefits to be obtained from the rule do not warrant and are not reasonably related to, the ban on sales contained in the rule within any given year." Plaintiffs' Second Amended Complaint p. 11 (May 14, 1982).

[6]We acknowledge that persons asserting that a rule is factually unsupported, could argue that in adopting such a rule the agency exceeded its statutory authority. For example, they might assert that the agency by adopting a regulation which is not factually supported has chosen a means of regulation which does

U.S. 502, 525 (1934) ("[T]he guaranty of due process ... demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained."); *Josam*, 26 Wis. 2d at 605, *Borden Co. v. McDowell*, 8 Wis. 2d 246, 259–63, 99 N.W.2d 146 (1959). The standard of review in such cases is clear. The court must determine whether the rule bears a reasonable relation to a legitimate governmental objective. *Josam*, 26 Wis. 2d at 596–97, 602–04.

This brings us to the second point of concern in this litigation. That is whether the parties are requesting this court to announce a specific standard of review to be used in constitutional challenges to the factual basis of administrative rules or a method for implementing the appropriate standard of review. The parties appear to have confused the standard of review, e.g., "reasonableness" in constitutional due process challenges, with the methodology for implementing the review.

For example in their petition for review the Mobile Home Builders repeatedly refer to the "hard look doctrine" standard of judicial review, yet they acknowledge that the "reasonable relationship" test has been followed by this court for some years. Cross-petition and Appendix of Plaintiffs-Appellants for

not in fact advance the policy specified by the legislature in the agency's enabling statute. We emphasize that this argument has not been made in this case. We also note that because the challenge is not based on statutory authority grounds we do not consider this court's decision in *Aetna Life Ins. Co. v. Mitchell*, 101 Wis. 2d 90, 303 N.W.2d 639 (1981), in which an insurance company challenged the State Insurance Commissioner's statutory authority to issue a specific regulation.

review of a decision of the court of appeals p. 14 (September 17, 1985). The State also refers to "hard look" as a standard of review. Supreme court brief of the Department of Industry, Labor and Human Relations p. 14 (January 29, 1986).

The Mobile Home Builders did note the difference between standard and methodology in their reply brief filed in this court.

> "The 'hard look' regimen is not in itself a 'standard' of judicial review. 'Hard look' review does not provide the court with a test or threshold limit for the proper quantum of evidence needed to support a rule. The 'hard look' regimen, rather is a judicially evolved *methodology* of review, which may be used in conjunction with any standard of review, whether the 'arbitrary and capricious' test, the 'rational basis' test, or the 'substantial evidence' test. The methodology of review, however, is critical, particularly where rules affecting major social, health and technical issues are concerned, because as courts and commentators have recognized, the various 'standards' of review tend to converge in actual practice into a general concept of 'reasonableness.'" Reply Brief of Cross-Petitioners p. 4 (February 7, 1986). (Emphasis in original.)

We believe this passage states the proper analytical framework for determining the proper role of the courts in administrative rule challenges. Thus, this opinion will focus on the methodology for courts to use in resolving constitutional challenges to the factual bases of administrative rules.

The record in this case, as well as the continued growth and complexity of administrative rulemaking, leads us to conclude that trial courts should insist that

parties challenging administrative rules clearly state which type of challenge under sec. 227.05, Stats., is being made, 1) constitutional, 2) exceeding statutory authority or 3) failure to comply with statutory regulatory procedures. The trial court should also require that the precise basis for each challenge is clearly enunciated, e.g., it is a constitutional due process challenge because the facts do not show that the rule is reasonably related to a legitimate governmental purpose. Finally, the parties should also be required to state the applicable standard of review the circuit court should apply in resolving the case.

These requirements will force litigants to clarify their theory of the case at the point when it should be clarified—before the action for declaratory judgment is filed. In addition, requiring a clear articulation of the basis for a rule challenge will discourage a shotgun approach to administrative rule challenges. If these pleading requirements are enforced, review by the courts will be facilitated. We turn now to the challenge in this case.

The Mobile Home Builders contend that because the .4 ppm standard and the test method prescribed to assure compliance are not supported by credible evidence, the rule violates their constitutional right to due process of law. Conversely, DILHR argues that the record provides sufficient support for its selection of the .4 ppm formaldehyde standard and the prescribed test method.

The Mobile Home Builders not only challenge the lower courts' rulings that Sec. Ind. 14.03 is valid but they contend that both courts, while invoking the proper standard of review, i.e., reasonable relation to legitimate governmental objective, the "reasonableness" standard, applied it improperly. They contend

courts should not be permitted to presume nonrecord facts to justify an administrative rule. They urge this court to articulate a less deferential method of applying the reasonableness standard when the factual basis of rules are challenged.

Although this case specifically involves the validity of Sec. Ind. 14.03, it also raises two issues concerning the nature of judicial review:

(1) In an action for declaratory judgment under sec. 227.05, Stats., is the review by the trial court confined to the agency record, or may it receive evidence in addition to the agency record?

(2) How should courts apply the "reasonableness" standard of review when there is a constitutional challenge to the factual sufficiency of an administrative rule?

## I. THE RECORD FOR REVIEW

Section 227.05, Stats., is silent with respect to the source of the record on which judicial review is based. In some special situations rules may be adopted without hearing. Section 227.02(1).[7] When a hearing is required by sec. 227.02, the agency is free to keep a record of it in any manner "it determines to be desirable and feasible." Section 227.022(2).[8] Thus, there may be no agency hearing record available or in some cases it may not be sufficiently complete to allow the court to determine the validity of agency action.

There are several alternatives available regarding the source of the record for review. Judicial review

---

[7]Currently renumbered sec. 227.16, Stats., effective April 22, 1986.

[8]Currently renumbered sec. 227.18, Stats., effective April 22, 1986.

could be limited to a record consisting of the language of the rule, the statute authorizing its adoption and the documents necessary to prove compliance with rulemaking procedures. *See, e.g.,* Or. Rev. Stat. sec. 183.400 (1985). Another alternative is review based solely on the record made during the agency rulemaking proceedings. The court could also consider the record made by the administrative agency on remand by the court to the agency for further fact-finding. Section 227.05(2), Stats. 1963, subsequently repealed by ch. 191, laws of 1965, required such a process. Finally, the court could review the record made by the agency during rulemaking proceedings supplemented by evidence presented to the trial court as the latter deems necessary and appropriate. *See, e.g.,* Iowa Code sec. 17A.19(7) (1985); *see also* Model State Administrative Procedure Act sec. 5–114 (1981). This has been the usual practice when the factual bases of agency rules have been challenged in this state. *E.g., Peterson v. Natural Resources Board,* 94 Wis. 2d 587, 288 N.W.2d 845 (1980); *Kachian v. Optometry Examining Board,* 44 Wis. 2d 1, 170 N.W.2d 743 (1969).

We conclude that in declaratory judgment proceedings under sec. 227.05, Stats., the trial court must be free to accept relevant evidence to supplement the agency record if it appears necessary to perform its judicial review function. If the court is to act as more than a rubber-stamp of agency action as we believe it must, *infra* p. 15, the court must understand the issues involved in the rulemaking. Particularly in a highly technical, complex area of rulemaking, such understanding is possible only if an adequate factual record is available to the court.

We note that the rulemaking process is not like the contested case hearing where opponents of agency action are afforded extensive rights to present evidence and cross-examine witnesses. Section 227.07, Stats.[9] While interested persons are afforded the right to be heard at a rulemaking hearing, sec. 227.022, the extent of their presentation can be limited, sec. 227.022(1), and thus there may be limited opportunity to challenge opposing evidence. Thus, to assure a balanced presentation of views, trial courts must be free to hear additional evidence.

As previously noted, because of prevailing rulemaking procedures, there may be no public hearing record or it may be minimal. Section 227.02, Stats. But we wish to emphasize to trial courts that in the normal case, i.e., in every agency rulemaking except the issuance of emergency rules pursuant to sec. 227.027,[10] the statutes require the agency to submit to the legislature prior to final adoption of the rule findings of fact and a statement explaining the need for the proposed rule. Section 227.018.[11] Thus the court will have some record from the agency concerning the basis and need for the rule. Moreover in many instances, particularly where the rulemaking concerns important issues of public health and safety, as this case illustrates, there will be a voluminous agency record available to the trial court for review which might make the taking of further evidence unnecessary.

[9]Renumbered sec. 227.44, Stats., effective April 22, 1986.

[10]Amended and renumbered as sec. 227.24, Stats., effective June 12, 1986.

[11]Renumbered sec. 227.19, Stats., effective April 22, 1986.

## II. APPLYING THE REASONABLENESS STANDARD OF REVIEW

Both sides in this action assert that an ambiguous statute, sec. 227.05, Stats., and two decades of court decisions under that statute, have generated confusion and misunderstanding among the bench and bar concerning how courts will review a constitutional challenge to the factual basis of an administrative rule. *See* S. Levine, *How to Review an Administrative Rule*, Wisconsin Bar Bulletin, October 1983 p. 40; Comment, *The Standard of Review of Administrative Rules in Wisconsin*, 1982 Wis. L. Rev. 691. We reiterate that in constitutional due process challenges to agency rules the standard of review is reasonableness, i.e., is the rule adopted by the agency reasonably related to a legitimate governmental objective. *Kachian*, 44 Wis. 2d at 6–7, *Josam*, 26 Wis. 2d at 596–97, 603–05. The court must uphold the rule if there are any facts in the record which support the rule chosen by the agency to effectuate the governmental policy objective sought to be attained. *See Daly v. Natural Resources Board*, 60 Wis. 2d 208, 220, 208 N.W.2d 839 (1973); *Josam*, 26 Wis. 2d at 596; Comment, *The Standard of Review of Administrative Rules in Wisconsin* at 697.

Though the standard of review is clear the question of how the court should conduct its review of agency rulemaking is not. A leading commentator notes that the law in this area is dominated by verbalisms which "have rarely been helpful and have usually been harmful; almost always they are useless, and they are often uncertain, conflicting, and even confusing." K. Davis, *Administrative Law Treatise*, sec. 29:1 at 334 (2d. ed. 1984). We agree. Our exhaus-

tive review of the case law on the methodology of implementing standards of review reveals that litigants and courts have fallen prey to unedifying verbal formulas.

By focusing on the process of analysis a court should follow we hope to avoid the trap of substituting meaningless verbalisms for specific instructions to the bench, bar, and agencies on how courts will review the factual sufficiency of administrative rules in constitutional due process challenges. We heed the words of Professor Davis when he advised: "Everyone—legislators, judges, practitioners, and critics—should learn from the experience of the past quarter of a century that refining the verbalisms about scope of review is not merely unprofitable but harmful." Davis, sec. 29:7 at 363. (Emphasis omitted.)

Instructing "a reviewing court to set aside action found to be arbitrary, capricious, or an abuse of discretion ... merely provides the terms in which the conclusion of invalidity may be pronounced. These terms do nothing to articulate the process of analysis by which the issue of invalidity is to be litigated and decided." D.W. Brodie and H.A. Linde,, *State Court Review of Administrative Action: Prescribing the Scope of Review*, 177, Ariz. St. L.J. 537, 550.

The initial question to be decided is whether a reviewing court in conducting its review may presume facts not of record.[12] The court of appeals concluded that if a reviewing court "can reasonably conceive that facts exist to justify the rule chosen by an

---

[12]A court may of course take judicial notice of those facts permitted by statute, secs. 902.01–902.03, Stats., and case law, *see* Judicial Council Committee Note, Chapter 902, Wisconsin Rules of Evidence, 59 Wis. 2d R. 24 (1974).

administrative agency, we will presume their existence. ..." *Liberty Homes v. DILHR*, No. 82–2437, slip opinion at 11. This presumption of factual support approach appears to have originated from a statement of the United States Supreme Court in *Pacific States Co. v. White*, 296 U.S. 176 (1935) that "where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies." *Id.* at 186. While this approach has not been adopted by this court in the context of administrative rule review, it was utilized by the court of appeals in *Wis. Tel. Ass'n v. Public Service Comm.*, 105 Wis. 2d 601, 611, 314 N.W.2d 873 (Ct. App. 1981).

We reject this approach to judicial review. By allowing the court to presume facts to justify a rule the review function is reduced to mere rubber-stamping of agency decisions. The appellate review process becomes "a superflous (although time consuming) ritual." *Ethyl Corp. v. Environmental Protection Agcy.*, 541 F.2d 1, 34 (1976). We are aware that in constitutional challenges of legislation courts do presume facts to sustain such enactments. *E.g., Milwaukee Brewers v. DH & SS*, 130 Wis. 2d 79, 99, 387 N.W.2d 254 (1986) ("insofar as the constitutionality of legislation depends upon facts, the facts are presumed to exist until shown otherwise"). While acceptable procedure in that context we believe that this level of deference is inappropriate when administrative agency action is involved.

Although agency rules have the full force and effect of legislative enactments, these rules do not receive the active scrutiny by the legislature that bills

receive. A rule does not require approval by a majority of both houses of the legislature and the governor. To the contrary the process for legislative review of agency rules provides for final approval of the rule by legislative inaction. *See* sec. 227.018, Stats. The process of agency rulemaking though admittedly a very public process, *e.g.*, sec. 227.02 (public hearing and notice requirements) is nevertheless a delegated process. For these reasons we believe that the courts should not presume conceivable facts to sustain agency rulemaking. The court must look at the record to determine whether the rule is reasonably related to a legitimate governmental objective.[13]

We note that our conclusion is in accord with the general trend in administrative law. Since the 1970's fewer courts invoke a presumption of factual support when reviewing administrative agency action. One commentator notes that one time the "Supreme Court presumed facts in support of rules, but in 1981 the case law is overwhelming that when facts are needed in support of rules they must be in the rulemaking record and will not be presumed. ..." Davis, *supra* p. 14, sec. 29:00–1 at 535 (1982 Supplement).

Having determined that courts may rely only on facts in the agency record or compiled at trial to sustain agency action, we turn now to how the court will review those facts to determine whether the rule is reasonably related to a legitimate governmental

[13]We note that our conclusion that a court may not presume non-record facts to support an agency rule does not affect the rule challenger's burden of proving that a rule is unconstitutional, e.g., that it bears no reasonable relation to a legitimate governmental objective. *See Josam*, 26 Wis. 2d at 596.

objective, i.e., sufficient facts of record exist to support the agency's rule choice.

To determine whether there is sufficient factual basis to support a rule, the reviewing court must decide whether there is a rational connection between the facts in the record and the rulemaking choice of the agency. In other words, based on the facts of record, could the agency reasonably have concluded that the rule would effectuate the legitimate governmental objective it is directed to implement.

In articulating the methodology of review, it is important to note at the outset what the role of the court is *not*. It is not the role of the court to weigh the evidence, nor is it the role of the court to judge the credibility of witnesses. It is not the role of the court to substitute its judgment for that of the agency. The court does not determine that an agency's regulation reflects the best policy choice or the most preferable, but only that there are reasonable facts which support that choice. As this court stated in *Kachian*, "'[i]n order to set aside a regulation, it must be clearly unreasonable. If reasonable minds may well be divided on the question, the administrator must be upheld.'" *Kachian*, 44 Wis. 2d at 8, quoting 2 Am. Jur. 2d *Administrative Law*, p. 133, sec. 304. In short, it is not the role of the court to become a super-agency with the power to supplant the agency as the decision maker.

What is the role of the court, given that it can be neither a rubber-stamp nor a super-agency? We conclude that it is the proper role of the court to undertake a study of the record which enables the court to penetrate to the reasons underlying agency decisions so that it may satisfy itself that the agency has exercised reasoned discretion by a rule choice that

does not deviate from or ignore the ascertainable governmental objective. *E.g.*, *Greater Boston Television Corporation v. F.C.C.*, 444 F.2d 841, 850 (D.C. Cir. 1970). In other words, the court must engage in a review process which allows it to determine whether, in light of the governmental objective, there is a rational connection between the facts in the record and the rule adopted by the agency.

This requires, first, that the court determine the governmental objective the agency rule is intended to advance. The court can consult the agency's enabling statute as a guide in determining the public policy objective the legislature has charged the agency with implementing.

Next, the court must engage in a "substantial inquiry" into the facts of record supporting the rule, one that is "searching and careful," *Ethyl Corp.*, 541 F.2d at 35. This inquiry is designed to educate the court. As stated in *Ethyl*, the court,

> "must understand enough about the problem confronting the agency to comprehend the meaning of the evidence relied upon and the evidence discarded; the questions addressed by the agency and those by-passed; the choices open to the agency and those made. The more technical the case, the more intensive must be the court's effort to understand the evidence, for without an appropriate understanding of the case before it the court cannot properly perform its appellate function."
> *Id.* at 36.

The reviewing court must understand the nature of the issues confronting the agency and the evidence presented so as to assure itself that the agency rule is based, not on emotion or intuition, but rather on

reasonable and reliable evidence. Such understanding will enable the court to determine whether the facts rationally support the rule chosen by the agency to effectuate the public policy it must implement. The question is not whether the agency could have chosen a different action, albeit reasonable; nor is the question whether the facts of record would lead the court to conclude that a different course had greater support in the record; nor is the question whether the court concludes that a different course would be wiser. *E.g., Kachian*, 44 Wis. 2d at 8. The sole question is, given the legitimate governmental objective the agency is charged with implementing, whether there is a rational connection between the facts in the record and the rulemaking choices of the agency.

If the agency rule is based on reasonable and relevant facts, the reviewing court must affirm. Under this approach to judicial review the agency's action must be upheld if there are any facts in the record from which a reasonable person could reach the conclusion the agency reached. *See Daly v. Natural Resources Board*, 60 Wis. 2d 208, 220, 208 N.W.2d 839 (1973); Comment, *The Standard of Review of Administrative Rules in Wisconsin* at 697; *1981 Model State Administrative Procedure Act* sec. 5–116 Comment. It is the agency decision which the court must review; the court should not make the same decision itself. In reaching its conclusion, the court must give due deference to the agency's expertise. *Cf. Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 568 (1980) (court should defer to agency's judgment and expertise in highly technical field of consumer credit); Brodie and Linde *supra* p. 14, at 538.

The approach to judicial review of agency rules just described is consistent with the type of review

conducted by this court in prior cases. *Kachian*, 44 Wis. 2d at 6–9 (court reviewed whether the facts established that optometry rule adopted by the optometry board was reasonably related to protecting public health); *Josam*, 26 Wis. 2d at 601–05 (court reviewed whether Board of Health rule concerning installation of plumbing fixtures was reasonably related to promoting public health). While this opinion is intended to clarify the method of review the court actually used in those cases it is also intended to resolve questions those cases left unanswered, e.g., whether courts will presume facts to sustain agency action and the source of the factual record to be reviewed.

We also note that the approach to judicial review we set forth today conforms to the legislature's approach, reflected in ch. 227, Stats., of carefully monitoring and controlling agency rulemaking. The legislature no doubt imposed requirements of record fact finding and an articulated rationale for agency rules, *see* secs. 227.018(3)(a), (e), 227.021(3)(b)-(c), 227.022(1) and (2), because of the expanded policy making functions of administrative agencies, *see* Davis *supra* p. 14 sec. 1:7–1:9 at 15–35, and the rising criticism of this expanded policy role for non-elected officials. *See Joint Committee for Review of Administrative Rules Reports, PART I*, pp. 10–12, (1977); *Joint Committee for Review of Administrative Rules Reports, PART II*, pp. 36–41 (1977). J. Freedman, *Crisis and Legitimacy in the Administrative Process*, 27 Stan. L. Rev. 1041, 1042–43 (1975). The imposition of these requirements manifests the intent of the legislature to increase agency accountability. This intent is in accord with this court's own conclusion that "[a]n administrative agency is subject to more rigid control

[than other branches] by the legislature and judicial review of its legislative authority and the manner in which that authority is exercised." *Schmidt v. Local Affairs & Development Dept.*, 39 Wis. 2d 46, 57, 158 N.W.2d 306 (1968).

We believe the approach to judicial review, described above, strikes the proper balance between legislative, agency and judicial power. It allows proper deference to the agency to whom the legislature has delegated authority for policymaking, thereby preserving the role of the agency as decisionmaker in policy areas where it possesses comparatively more technical and scientific expertise than the courts. But this approach also guarantees a meaningful check on agency officials whose activities are often shielded from public scrutiny. Such a check is necessary to assure that the constitutional due process rights of those regulated by agency rules are not compromised.

Having explained the appropriate scope of judicial review, we will now apply it to the facts in this case.

### III. THE STANDARD APPLIED IN THIS CASE

In this case the Mobile Home Builders challenge the factual basis of Sec. Ind. 14.03. They specifically challenge the selection of the .4 ppm standard for formaldehyde concentration in the ambient air and the NIOSH P and CAM 125 test for measuring compliance with the standard. They contend that their right to substantive due process was violated because DILHR adopted a rule which is not reasonably related to the benefit sought to be attained, safe and sanitary design and construction of mobile homes.

Whether Sec. Ind. 14.03 violates the Mobile Home Builders' due process rights is a question of law which we will review *de novo*, without deference to the lower courts. *State v. Nordness*, 128 Wis. 2d 15, 381 N.W.2d 300 (1986).

We have reviewed the agency record and evidence admitted at trial and conclude that there are facts of record which support DILHR's adoption of the .4 ppm standard as the maximum level of formaldehyde permitted in the ambient air of mobile homes and the NIOSH P and CAM 125 test procedures.

In this case the governmental objective DILHR is directed to implement is clearly expressed in the agency's enabling statute. Section 101.92(1), Stats., authorizes DILHR to adopt "rules for the safe and sanitary design and construction of mobile homes. ..." We conclude there are facts of record that reasonably support DILHR's choice of the .4 ppm standard and the NIOSH P and CAM 125 test procedures. Thus, the rule is reasonably related to the legitimate governmental objective of safe and sanitary design and construction of mobile homes and therefore does not violate the Mobile Home Builder's due process rights.

In this case the agency rulemaking record alone consists of 25 volumes of 10,000–12,000 pages. The record indicates that the agency thoroughly reviewed available medical and scientific evidence and alternative resolutions of the problem. The rule underwent extensive public hearing and review by the appropriate legislative committees. *See Formaldehyde Report and Standard: Proposed Final Indoor Ambient Air Quality Standards For Mobile Homes*, prepared by DILHR, October 1980; *Formaldehyde Report and Standard: Proposed Final Amendments to Indoor*

*Ambient Air Quality Standards for Mobile Homes*, prepared by the DILHR, March 1982 [hereinafter *1982 Formaldehyde Report*]. DIHLR's rationale for adopting the .4 ppm standard and the NIOSH P and CAM 125 test procedure is clearly documented. We will review the facts which support each choice in turn.

The basis for the relatively low .4 ppm standard is that formaldehyde is an irritant at low levels. This means that eye, nose and throat discomfort is experienced by persons exposed to formaldehyde. As we review the record we find sufficient reliable expert testimony to the effect that the eyes, nervous and olfactory systems of the human body may be irritated at concentrations lower than .4 ppm.

The State Medical Society advocated a .1 ppm standard and other medical doctors urged a .1–.2 ppm level based on research that a substantial number of people experienced irritation at these low levels and a concern that formaldehyde has a potential for inducing tumors in animals and humans. The National Academy of Science reports in the record also indicate that many persons experience adverse irritant effects from low levels of formaldehyde exposure, e.g., .25–.5 ppm.

The record also contains the results of tests by several government health agencies of residential dwellings constructed with materials containing formaldehyde. The results indicate that residents experienced symptoms, e.g., eye, nose and throat irritation, at very low formaldehyde concentrations. For example, in tests conducted by the Connecticut Department of Health and Consumer Protection, symptoms occurred in 37 percent of the 224 residents when formaldehyde levels were below .5 ppm. Committee on Aldehydes, Board on Toxicology and Environmental

Health Hazards, Assembly of Life Sciences National Research Council, *Formaldehyde and Other Aldehydes*, 200–01 (1981).

We do not deny that there is evidence in the record to the effect that the threshold level of irritation in humans is higher than the .4 ppm standard selected by DILHR. The record indicates that DILHR pursued a middle ground in selecting the .4 ppm standard. The record contains some evidence that would support a lower standard and some that would support a higher standard. When reasonable minds are divided on the question of which standard to select the choice of the agency will be upheld. *Kachian*, 44 Wis. 2d at 7–8.

We also find support in the record for the NIOSH P and CAM 125 test selected by DILHR to measure compliance with the .4 ppm standard. DILHR acknowledged that there are differences of opinion in the scientific community concerning the appropriate test procedure to measure compliance with the .4 ppm standard. But the fact experts disagree does not invalidate DILHR's choice. *Id.* The Formaldehyde Institute, which represents a significant number of companies from the industry, testified it had no objections to use of the test method and procedures specified in the rule. The Weyherhauser Company specifically testified the NIOSH P test method is a reliable test for measuring formaldehyde at the .4 ppm level and below. DILHR also considered the alternative test methods available for determining formaldehyde concentrations. It selected the NIOSH P and CAM 125 test method because there was evidence and testimony that it has been widely utilized by government and industry with substantial success. *1982 Formaldehyde Report, supra* p. 24 at

17-23. Thus, from our review of the record we conclude DILHR had a reasonable basis for its selection of the NIOSH P and CAM 125 test.

It appears from the record that all the evidence was carefully reviewed by the agency. It is the agency decision we must review. We will not independently weigh the evidence or determine whether the agency made the "best" choice. Our task is simply to ascertain whether their choice is reasonably supported by any facts in the record. We conclude that it is and therefore affirm.

*By the Court.*—The decision of the court of appeals is affirmed.