Harlan RICHARDS, Plaintiff-Respondent,

v.

Tim CULLEN, Defendant-Appellant. †

Court of Appeals

*No. 88-2419. Submitted on briefs April 3, 1989.—Decided May 18, 1989.*

(Also reported in 442 N.W.2d 574.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Frank D. Remington,* assistant attorney general.

For the plaintiff-respondent the cause was submitted on the brief of Harlan Richards, *pro se,* of Waupun.

Before Dykman, Eich and Sundby, JJ.

EICH, J.  Tim Cullen, Secretary of the Wisconsin Department of Health and Social Services, appeals from an order declaring one of the department's administrative rules unconstitutional. With some exceptions not relevant here, the rule allows prison officials to withhold fifteen percent of all money earned or acquired by inmates, up to a maximum of $500, and to deposit all such funds into a "Mandatory Release Account" for the individual inmate's use upon release from prison. Richards is serving a life sentence, and the issue is whether, because of his status as a "lifer," the rule violates his right to due process and equal protection of the law.

The trial court held the rule unconstitutional and ordered the immediate release of the funds in Richards's account. We reach the opposite conclusion.

Prior to 1985, the department was required by law to provide every released prisoner with what was known as "gate money" and "dress-out clothing." Specifically, sec. 53.13, Stats. (1983–84), directed that "[w]hen released on discharge or parole [the prisoner] shall be given adequate clothing and an amount of cash . . . in addition to transportation . . . from the prison to any place in this state." That requirement was deleted by the legislature in 1985 Wis. Act 120, sec. 149. The department then promulgated Wis. Adm. Code, sec. HSS 309.466(1), which provides in part: "the institution business office shall deduct 15% of all income earned by or received for the benefit of the inmate, . . . until $500 is accumulated, and shall deposit the funds in a release account in the inmate's name." This rule is the subject of Richards's challenge.

Administrative rules are accorded the same presumption of constitutionality as are statutes enacted by the legislature. *Quinn v. Town of Dodgeville,* 122 Wis. 2d

570, 577, 364 N.W.2d 149, 154 (1985); *State v. Menard, Inc.,* 121 Wis. 2d 199, 204, 358 N.W.2d 813, 816 (Ct. App. 1984). The party challenging a rule bears a heavy burden, for its unconstitutionality must be established beyond a reasonable doubt. *Quinn,* 122 Wis. 2d at 577, 364 N.W.2d at 154. We will not set aside an agency regulation unless it is "clearly unreasonable." *Liberty Homes, Inc. v. DILHR,* 136 Wis. 2d 368, 385, 401 N.W.2d 805, 812 (1987) (citation omitted). "[E]very presumption must be indulged to sustain the [rule] if at all possible and, wherever doubt exists as to [its] constitutionality, it must be resolved in favor of constitutionality." *Chappy v. LIRC,*136 Wis. 2d 172, 185, 401 N.W.2d 568, 574 (1987), quoting *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973). Richards's constitutional attack is grounded in the due process and equal protection clauses of the federal and state constitutions. He raises questions of law which we review *de novo,* owing no deference to the trial court's decision. *Liberty Homes,* 136 Wis. 2d at 390, 401 N.W.2d at 814.

## I. DUE PROCESS

Richards does not challenge the department's authority to adopt the rule. Rather, he argues that because he is serving a life sentence, and thus has no "guarantee" of release, he also has no guarantee that his property—the funds held in the mandatory release account—will ever be returned to him. As a result, he contends that the rule permanently deprives him of his property without due process of law.

We see no basis for any claim of a substantive due process violation in this case, for a prison inmate has no inherent or absolute interest in his or her personal prop-

939

erty while incarcerated. In *Secret v. Brierton,* 584 F.2d 823, 830 (7th Cir. 1978), the Seventh Circuit Court of Appeals held that "[t]here is no constitutional right prohibiting prison officials from confiscating most of a prisoner's personal property pending release from prison. The constitutional violation arises only if they confiscate that property without due process of law." This suggests that a claim of violation of procedural due process is the only due process claim available to an inmate who is deprived of property interests during his or her incarceration.

The state concedes that Richards has a limited property interest in the withheld funds that may implicate considerations of procedural due process. Our inquiry, then, is whether Richards received the process which was due him, and that inquiry involves consideration of three factors: (1) the nature of the private property interest affected by the governmental action; (2) the risk that the process used may result in an erroneous deprivation of that property interest; and (3) the importance of the governmental interest at stake, "including the function involved and the fiscal and administrative burdens that . . . additional or substitute procedural requirement[s] would entail." *Rucker v. ILHR Department,* 101 Wis. 2d 285, 292, 304 N.W.2d 169, 173 (Ct. App. 1981), quoting *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

As to the first, Richards's property interest is relatively minor given that he still has access to the remaining eighty-five percent of his funds, subject to certain other restrictions not at issue here. We are mindful of the fact that inmates have limited funds upon which to draw for canteen and recreational items, but the $500 release account ceiling insures that they are not unduly

burdened while imprisoned. And there is little, if any, risk of "erroneous deprivation," for all inmates receive monthly statements showing all deposits, disbursements and withdrawals to and from their accounts. They are thus able to continually monitor the prison business office's computations and accounting practices.

We are also satisfied that the governmental interests at stake are substantial. The department's order adopting the challenged rule emphasizes its intent to aid the successful reintegration of released prisoners into society by insuring that, at the very least, they will have decent clothing and some money for transportation, food and lodging upon their release. The order also notes that making some provision for released inmates' immediate financial needs serves a public protection purpose, for, to a degree at least, it removes the immediate temptation to acquire needed funds through illegal means. Finally, as we have said, prior to the legislature's authorization of such withholding and the department's promulgation of the rule, the statute providing for gate money, dress-out clothing and transportation was repealed. Thus, return to a taxpayer-supported program would entail obvious fiscal burdens for the people of Wisconsin.

It appears, then, that there is little risk of erroneous deprivation of an inmate's property interests, and that those interests are themselves relatively insubstantial. In contrast, the government has a significant interest in easing released prisoners' transition to society and avoiding the financial burden of public funding of the separation payments. Richards has not persuaded us that the balance of these factors tips his way. On the contrary, we are satisfied that the requirements of procedural due process have been met.

## II. EQUAL PROTECTION

Richards does not dispute the constitutionality of the rule as applied to inmates serving determinate sentences—those with mandatory release dates. However, because he is serving a life sentence, with no "guarantee" of parole, he asserts that it is possible he may never be released from prison and thus never gain access to the withheld funds. As a result, he maintains that the withholding rule treats him—and other lifers—in a discriminatory fashion; that its "burdens" fall disproportionately on lifers. It is an equal protection argument—that because he and other lifers are not similarly situated with the rest of the prison population, they should not be similarly treated with respect to withholding funds for repayment upon release.

There is no suggestion that inmates serving life sentences are a suspect class. Thus, the proper constitutional inquiry is whether the department, in adopting the withholding rule, has made an irrational or arbitrary classification—whether there is a rational basis for a rule which affects lifers disproportionately. *Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 883, 892 (1987).

In the absence of a suspect classification, the equal protection clause requires only that a classification that results in unequal treatment bear some rational relationship to a legitimate state purpose. The test is not whether some inequality results, but whether any reasonable basis exists to justify the classification—in this case, the failure to classify and treat lifers differently than those inmates serving determinate sentences. *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 560, 426 N.W.2d 33, 35 (1988). Wisconsin recognizes a "basic

and strong presumption supporting the constitutionality of any classification made by the legislature." *State ex rel. La Follette v. Reuter,* 36 Wis. 2d 96, 109, 153 N.W.2d 49, 54 (1967).

Specifically, Richards's argument is that, when applied to lifers, "it cannot be disputed that the mandatory deduction becomes a permanent deprivation of funds . . . [and that he] will *never* get [them] back again because he has no right to the release upon which the return of the funds is predicated." (Emphasis in original.) He acknowledges, however, that "[t]here is one exception to this—if the parole board decides on its own to allow the [inmate] to be released on parole." Indeed, he concedes in his brief that at least some lifers—in his words, "a handful"—are released each year.

The department's order adopting Wis. Adm. Code, sec. HSS 309.05 indicates that inmates serving life sentences are eligible for parole in either 11.25 years or 13.33 years, depending on the date on which the sentence was imposed. Elsewhere in the order, the department notes that "[v]ery few inmates spend their entire lives in prison," and we consider it to be common knowledge in the legal and corrections communities that not all persons sentenced to life terms in Wisconsin die in prison. Some undoubtedly do, as do some inmates sentenced to specific terms for noncapital crimes who, because of age or illness, do not live to see their mandatory release dates. But some lifers are also released, and thus they, too, may benefit from the sequestered funds.

We have already discussed the provisions of the department's order referring to the need of released inmates to have funds available to aid in their reintegration into society. The order also states that the provision of funds for those who have been incarcerated for longer-

than-average periods of time—such as paroled lifers—is even "more critical . . . because [their] ties to the community [have been] severed and [their] job prospects . . . hindered" by the length of their confinement.

We note, too, that the legislature's plain purpose in eliminating the gate money, dress-out clothing and transportation payments to released inmates in favor of the mandatory withholding plan in sec. 46.07, Stats., was to shift those "mustering-out" expenses from the taxpayers to the inmates themselves. Wisconsin Adm. Code, sec. HSS 309.466 carries out that intention. The dual goals of promoting the safe and successful reintegration of released prisoners into society and of preserving the limited state funds available for operation of the prison system are unquestionably valid and substantial governmental aims.

Richards has not established that the withholding program implemented through Wis. Adm. Code, sec. HSS 309.466 will in all cases permanently deny those funds to lifers; indeed, he has conceded the commonly-accepted fact that some lifers are paroled. And because he has not established beyond a reasonable doubt that including lifers in the general class of inmates subject to the rule lacks any reasonable or rational basis, his constitutional attack must fail in its entirety.

We conclude that Wis. Adm. Code, sec. HSS 309.466 is constitutional, whether applied to lifers, to the general prison population, or both, and we therefore reverse the trial court's order.

*By the Court.*—Order reversed.