14 P.3d 295

**Reinhold F. ZUTHER, Plaintiff–Appellant,**

v.

**STATE of Arizona, Arizona Department of Corrections, Defendants–Appellees.**

**No. CV–99–0425–PR.**

Supreme Court of Arizona, En Banc.

Dec. 21, 2000.

Reinhold F. Zuther, In Propria Persona, Yuma and Fennemore Craig, by James D. Burgess, Phoenix.

Janet Napolitano, Attorney General, by Randall M. Howe, Assistant Attorney General, Liability Management Section, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

JONES, Vice Chief Justice.

## I. INTRODUCTION

¶ 1 Reinhold F. Zuther was convicted of a felony in 1992 and sentenced to prison. At the time of the conviction, A.R.S. § 31–228 required the Arizona Department of Corrections (ADOC) to provide the sum of $50 in "gate money" to each prisoner upon release from prison unless the inmate had more than $250 otherwise available.

¶ 2 On April 22, 1993, the legislature enacted A.R.S. § 31–237, effective immediately, which created a "dedicated discharge account" for each inmate and required ADOC to deposit a percentage of inmate prison wages into the account until it contained $50. The same year, the legislature enacted two amendments to § 31–228. Act of April 22, 1993, ch. 242, § 1 (effective April 22, 1993); Act of April 27, 1993, ch. 255, § 60 (effective January 1, 1994). The first, which also took effect April 22, the day of passage, reduced ADOC's contribution of gate money to the difference between the amount on deposit in the prisoner's discharge account and the stat-

utory amount of $50. The second, enacted five days later on April 27, provided prospectively for release of inmates to community supervision programs or conditional parole and also for gate money to inmates thus released whose crimes were committed after January 1, 1994.[1]

¶ 3 Thus, once a prisoner had earned enough to bring the balance in his discharge account to $50, gate money allocated from ADOC funds upon discharge from prison would no longer be required. If, however, a prisoner was released before accumulating $50, the difference would be contributed by ADOC. Zuther objected to this withholding and deposit system and filed this action, *pro se*, alleging that the changes in the gate money statutes could not be applied to him retrospectively, that the legislature had intended the amendments to be applied only to persons convicted of crimes committed after January 1, 1994, and that application of the new laws to him would violate constitutional due process and the prohibition against *ex post facto* laws. The trial court dismissed Zuther's complaint because a separate statute, A.R.S. § 31–201.01(L), expressly prevented an inmate from filing an action seeking damages under these circumstances.

■ ¶ 4 The court of appeals reversed, holding Zuther's suit proper to the extent he requested declaratory relief from the application of the new gate money statutes. The court determined that the statutes were being misapplied to Zuther, reasoning that retrospective application would affect Zuther's substantive rights by reason of the specific language of prospective application in the April 27 amendment to § 31–228. The state responded with a Petition for Review in this court. We granted review to determine whether changes to Arizona's gate money statutes, § 31–237 and the April 22 amendment to § 31–228, are applicable to inmates convicted of crimes committed before January 1, 1994 and whether, as a matter of law, the lower courts correctly applied those statutes to Zuther. Jurisdiction attaches pursuant to article VI, section 5(3) of the Arizona Constitution.[2]

## II. DISCUSSION

### A. The "Gate Money" Statutes

¶ 5 The issue, one of first impression, is whether the 1993 gate money statutes, § 31–237 and the April 22 amendment to § 31–228, apply only to inmates convicted of crimes committed after January 1, 1994. Section 31–237, which established dedicated discharge accounts for prisoners, reads in relevant part:

§ 31–237. **Dedicated discharge accounts**

A. Each wage earning prisoner who is committed to the department shall deposit into a dedicated discharge account of the prisoner a percentage of wages earned by the prisoner. The percentage shall be determined by the director except that the amount deposited shall not exceed thirty percent of all wages earned by the prisoner. The department shall continue to deposit the percentage of wages earned by the prisoner in the dedicated discharge account until the account registers a fifty dollar balance.

B. The monies that are accumulated in the dedicated discharge account shall be distributed to the prisoner on the prisoner's discharge from the department or transfer to a community release status or to home arrest.

¶ 6 In the same 1993 session, the legislature enacted the two amendments to § 31–

---

1. To distinguish, we refer to these statutory amendments to § 31–228 as "the April 22 amendment" and "the April 27 amendment."

2. We note that Zuther was released from the custody of ADOC on October 10, 2000. Notice of Release, CV–99–0425–PR. We are unable to determine from the record whether the release renders Zuther's claim moot. We presume, however, that based on §§ 31–228 and 31–237 and the assertions made in the complaint, gate money Zuther received upon discharge was funded from his dedicated discharge account. Regardless, we retain jurisdiction. Opinions have been issued in cases where the question may have become technically moot, but the issue is nevertheless of statewide importance and capable of frequent repetition. *See Zarabia v. Bradshaw*, 185 Ariz. 1, 4 n. 1, 912 P.2d 5, 8 n. 1 (1996). Arizona's prison population is in excess of 26,000. The issue thus retains significant statewide importance.

228. The April 22 amendment provided that all monies accumulated in a wage-earning prisoner's discharge account would be furnished to the prisoner upon discharge from prison. Gate money for discharged prisoners would thus continue to be paid, but would be funded in the following manner:

> Not less than fifty dollars in cash shall be furnished to each nonwage earning inmate not previously paroled or discharged from the state department of corrections, unless such prisoner has immediately available financial resources in excess of two hundred fifty dollars. Except for prisoners who are committed to the department as a condition of probation, if a wage earning prisoner has accumulated less than fifty dollars in the prisoner's dedicated discharge account, the monies accumulated in the account shall be furnished to the prisoner upon the prisoner's parole or discharge, and the state department of corrections shall furnish the difference in cash up to fifty dollars.

1993 Ariz.Sess.Laws, ch. 242, § 1 (effective April 22). The practical effect of this change was to reduce ADOC's contribution of gate money to the difference, if any, between the amount in a prisoner's discharge account and $50. In other words, the law in effect when defendant was sentenced provided $50 in cash upon discharge. The changes required that a prisoner's personal funds up to $50 be applied as gate money through the prisoner's own discharge account.

¶ 7 Like § 31–237, the April 22 amendment took effect April 22. The legislature gave no express direction for prospective or retrospective application of either statute. 1993 Ariz.Sess.Laws 242, § 4.

¶ 8 In contrast, the April 27 amendment came as part of a more comprehensive statutory scheme known as the "Truth in Sentencing Act," which revised multiple sections of Arizona's criminal and penal codes. 1993 Ariz.Sess.Laws 255, §§ 1 through 101. This change, among other things, modified the sentencing structure for criminal offenses, created new types of conditional release for those serving prison sentences, and extended the application of § 31–228 to prisoners released to these new programs. As enacted, however, the April 27 amendment applied "only to persons who commit ... felon[ies] after the effective date of this act." 1993 Ariz.Sess.Laws 255, § 99. The effective date was expressly fixed at January 1, 1994.

¶ 9 These same-session amendments (April 22 and April 27) were later blended by the Arizona Legislative Council, pursuant to the state's blending statute, A.R.S. § 41–1304.03, to form a single amendment to § 31–228.[3] The court of appeals construed the blending statute and restricted the two § 31–228 amendments and the newly enacted § 31–237 to post-January 1, 1994 application only, by reason of the express language of the April 27 amendment fixing its effective date at January 1, 1994.

¶ 10 The appellate court opined that §§ 31–237 and 31–228 "must logically take effect together, for they are two related pieces of one legislative plan; one statute creates and funds the savings account that the other statute uses as the source of the prisoner's 'gate money.' " *Zuther v. Arizona*, 197 Ariz. 45, 47 ¶ 5, 3 P.3d 965, 967 ¶ 5 (App.2000). The appellate court held, perceiving a cohesive legislative scheme, that since application of the April 27 amendment was restricted to "prospective only," neither the April 22 amendment nor § 31–237 could affect inmates whose crimes were committed before January 1, 1994. *Zuther*, 197 Ariz. at 47 ¶ 6; 3 P.3d at 967 ¶ 6. Zuther, whose felony was committed at least as early as 1992, was therefore declared exempt from the 1993 amendments. *Id.* at ¶ 8.

¶ 11 We conclude that the court of appeals incorrectly approved blending under § 41–1304.03 and that it was error to limit § 31–237 and the April 22 amendment to inmates whose crimes occurred after January 1, 1994.

---

**3.** When a section of the statutes is added or amended by two or more enactments after the most recent publication of the statutes, the director of the Arizona Legislative Council may combine the multiple versions of each respective section into a single section unless doing so would effect a substantive change in the existing statutes or the provisions of the new enactment. A.R.S. § 41–1304.03 (1999).

The sole statute deserving of such application is the April 27 amendment to § 31–228.

### B. Application of the Arizona Blending Statute

¶ 12 The state is correct when it argues the January 1, 1994 effective date of the April 27 amendment should have no effect on either § 31–237 or the April 22 amendment. The April 27 amendment was restricted to felonies committed after January 1, 1994 because the new types of inmate release had not existed under prior statutes. Specifically, prior to the 1993 changes, neither conditional parole nor community supervision was permissible. *See* A.R.S. § 31–228 (Supp.1992). In addition, the April 27 amendment did not purport to change that part of the April 22 amendment that established the dedicated discharge account as a source of gate money. It merely amended the original 1992 version of § 31–228 to include, as of January 1, 1994, prisoners released "conditionally" and on "community supervision." By the time the April 27 amendment was enacted, the April 22 amendment was already in effect.

¶ 13 We conclude the legislature consciously chose the later start date for the April 27 amendment in order to separate the two in both time and substance. The legislative intent emerging from these provisions, viewed separately, is that the April 22 amendment dealing with gate money should apply to *all* inmates, while the April 27 amendment, as part of the "Truth in Sentencing" scheme, should apply, as expressly provided, only to inmates released under programs never before implemented who committed their offenses after January 1, 1994. Moreover, because the effective dates of the two amendments were expressly separated as a matter of clear legislative enactment, we cannot, by judicial directive, delay the effective date of the April 22 amendment until January 1, 1994 to make it coincide with the April 27 amendment.

¶ 14 Our "blending" statute cannot reconcile an irreconcilable difference. Section 41–1304.03 requires the Arizona Legislative Council to blend multiple amendments to one statute into a single section, *unless doing so would substantively change the statutory meaning.* To postpone the effective date of the April 22 amendment would amount to a substantive change, contrary to the express pronouncement of the legislature. Section 41–1304.03 gives the legislative council authority to combine redundant, non-conflicting, amendments. These amendments are in conflict such that their differing effective dates must remain as legislatively directed.

### C. Retroactive Application

¶ 15 The parties disagree on whether the gate money provisions are in fact being applied retroactively to deprive Zuther of a $50 payment made entirely with state funds. A statute applies retroactively when it "attaches new legal consequences" to events completed before the effective date of the statute. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S.Ct. 1483 (1994); *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 205, 972 P.2d 179, 189 ¶ 15 (1999). It is important, therefore, to identify the "completed event" in each case. The court of appeals concluded, at least implicitly, that the completed event was the commission of Zuther's crime in 1992, which indeed did occur before the effective date of the 1993 statutes. The state of course disagreed, arguing that the event should be the completion of all requirements necessary to make an inmate eligible for release from prison. The state is correct.

¶ 16 For purposes of retroactivity analysis, the pivotal date is the effective date of the statute, April 22, and the question is whether the completed event—Zuther's release from prison—requires that we apply the statute to some pre-existing interest to which Zuther was entitled. Zuther claims a pre-existing interest under the pre 1992 gate money statutes. But his argument is flawed because nothing is due any inmate until the date of release, and only on that date can ADOC determine whether the statutory requirements of § 31–228 are fully satisfied.

¶ 17 A statute is not necessarily retroactive because it "relate[s] to antecedent facts." *Tower Plaza Inv. Ltd. v. DeWitt*, 109 Ariz. 248, 250, 508 P.2d 324, 326 (1973). In *Tower*, we upheld an excise tax on the rental

income of a partnership that owned rental property on which it entered into a lease agreement before the tax was enacted. This court found that the event affected by the law was not the signing of the lease, which indeed occurred before the excise tax was enacted, but rather was the receipt of that portion of rental income under the lease, which occurred after the passage of the excise tax. We therefore held that the law was not applied retroactively. *Tower,* 109 Ariz. at 251, 508 P.2d at 327. Here, the gate money amendments operate the same way. The legislature may enact laws that apply to incarceration and release of inmates. "Such laws, however, may only change the legal consequences of *future* events." *San Carlos Apache Tribe at* ¶ 16, 972 P.2d 179 (emphasis in original). We are dealing here with a future event—Zuther's eligibility for release from prison. The gate money provisions do not fund an inmate's dedicated discharge account by extracting wages previously earned. Rather, they apply only to wages earned after the statute's effective date. Accordingly, the April 22 amendment is not being applied to Zuther retrospectively. When enacted, its application was prospective, with reference only to release from prison.

¶ 18 Our recent decision in *Aranda v. Industrial Commission,* 198 Ariz. 467, 11 P.3d 1006 (2000), held that a prison inmate owned a vested property right in a workers' compensation award that became final prior to the crime and the incarceration. Such an award could not be abrogated by subsequent act of the legislature. As explained in *Aranda,* a statute may be applied retroactively when the statute is merely procedural, or even if substantive, where no vested property right is affected. However, the *Aranda* analysis cannot be applied in the case at bar because the facts differ significantly. There, we said that a final workers' compensation award substantiates a legal obligation for payment upon which the worker and the carrier have a right to rely. If a carrier withholds or reduces payment, the claimant may immediately exercise the existing legal right to enforce compliance with the award by direct action against the carrier for payment and, if relevant, bad faith. *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 275, 872

P.2d 668, 679 (1994). The final award of workers' compensation left nothing to contingency or to some future event. *Aranda* at ¶ 22. "Vesting" occurred, at the latest, when the award became final. *Aranda* at ¶ 22.

¶ 19 In contrast, Zuther has only an expectancy, contingent on the event of release from prison. Vested rights are neither contingent nor expectant. *See Steinfeld v. Nielsen,* 15 Ariz. 424, 465, 139 P. 879, 896 (1913) (defining contingent rights as those that "are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting").

¶ 20 Gate money is a benefit the legislature confers on inmates at the time of release in order to promote public welfare and the common good. *See Richards v. Cullen,* 150 Wis.2d 935, 442 N.W.2d 574, 576–77 (App.1989) (purpose of gate money is to aid inmates' integration into society and to remove "immediate temptation" to acquire needed funds through illegal means). Stated otherwise, gate money is a welfare measure predicated on a conditional promise, not a vested property right. It is subject to adjustment by the legislature. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) ("[A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels."). Moreover, other states' statutory provisions shifting the funding of gate money from the state budget to inmate wages have withstood constitutional challenges similar to Zuther's. *See Webster v. Chevalier,* 834 F.Supp. 628, 630–31 (W.D.N.Y.1993); *Cullen,* 442 N.W.2d at 578.

¶ 21 The reason the legislature is permitted retrospectively to modify rights or interests prior to vesting is sound. The rule preserves vested rights from diminution while giving government the ability to change and manage public policy.

When the defendant asserts that substantive legal rights cannot be retroactively impaired, he cannot mean that substantive rights may never be altered. Such a contention would sweep far too broadly, since substantive rights, whether statutory or

common law, may be abrogated before vesting. If the rule were otherwise, our continually changing landscape of ideas and laws would instead resemble a petrified forest populated by outmoded concepts of the past.

*Hall v. A.N.R. Freight Sys., Inc.,* 149 Ariz. 130, 139, 717 P.2d 434, 443 (1986) (citations omitted). To hold that Zuther is perpetually entitled to the inmate policies and procedures in place at the time he committed his crime would unduly restrict the state and ADOC. Necessary and reasonable policy changes could not be made except with great difficulty and at great public expense. Accordingly, because Zuther had no vested property right in gate money, we hold that neither the enactment of A.R.S. § 31–237 nor the two amendments to § 31–228 violate this court's prohibition against the retrospective application of statutes to substantive or vested rights. Zuther's rights are neither substantive nor vested, and the statutes are not being applied retrospectively.

### D. Due Process

¶ 22 Zuther alleges that application of the gate money statutes to him constitutes a due process violation under the fourteenth amendment to the U.S. Constitution and article two, section four of the Arizona Constitution. The lower courts did not address this issue because it was raised for the first time during supplemental briefing.

¶ 23 We presume the amendments in question are constitutional and Zuther has the burden of proving otherwise. *See Kotterman v. Killian,* 193 Ariz. 273, 972 P.2d 606 ¶ 31 (1999); *Bird v. State,* 184 Ariz. 198, 203, 908 P.2d 12, 17 (App.1995). A prisoner may have a property interest in a public benefit which would entitle him to due process protection. *See Cullen,* 442 N.W.2d at 576–77 (inmate has a limited property interest in funds withheld that may implicate considerations of due process). But a prisoner has no property interest in funds conditionally promised from the state treasury.

¶ 24 Although Zuther does not make a distinction in the property interests he attempts to articulate, we discern two: (1) that portion of his wages withheld; and (2) gate money previously provided by the state. Following the reasoning of *Cullen,* even though withholding a percentage of wages affects Zuther's property rights in earned wages, he has no constitutional right to possess that property while in prison, and the delay in access to the amount withheld is at most a *de minimus* deprivation. Operation of the gate money statutes does not allow ADOC to withhold an inmate's earnings permanently. In the end, he receives all of it.

¶ 25 Second, Zuther's interest in the $50 gate money previously funded by the state does not amount to a property interest owned by Zuther. Until paid, these are state funds. *Cf. Atkins v. Parker,* 472 U.S. 115, 129–30 & n. 32, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). Moreover, both claims are rendered invalid by the persistent problem that Zuther's gate money, regardless of source, does not become payable until the moment of release from prison. He has no due process claim.

### E. *Ex Post Facto* Violation

¶ 26 An *ex post facto* law is one that increases the punishment or aggravates any crime previously committed. *State v. Beltran,* 170 Ariz. 406, 407, 825 P.2d 27, 28 (App.1992). The United States Constitution and the Arizona Constitution prohibit *ex post facto* laws. U.S. Const. art. I, § 9; Ariz. Const. art. II, § 25. Zuther urges us to apply the reasoning of *Beltran* and hold that the change in the way Arizona funds its prisoners' gate money is additional punishment. We find that it is not.

¶ 27 In matters like these, we have adopted the Supreme Court's distinction by stating, "If the legislative aim was punitive, we treat the [statutory] requirement as punishment. If on the other hand, the legislature indicated a non-punitive purpose, we must 'inquire further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.'" *State v. Noble,* 171 Ariz. 171, 175, 829 P.2d 1217, 1221 (1992) (quoting *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). Here, the gate money amendments are not criminal statutes; they are

112

contained in Title 31, chapter 2, article 2 of the Arizona Revised Statutes, which regulates ADOC's relationship with inmates. Nor are these statutes even remotely punitive. The new statutes do nothing more than assure implementation of the state's public welfare motive previously envisioned under the old scheme. The statutory changes do not affect a prisoner's custody status or impose any new fine or penalty. In the absence of a clearly punitive effect or purpose, the *ex post facto* argument must fail.

## III. Conclusion

¶ 28 The gate money statutes of 1993, *i.e.*, § 31–237 and the April 22 amendment to § 31–228, are applicable to Zuther. The statutes are given no retrospective effect because they apply strictly to wages earned after the effective date. An inmate who works after the effective date does so knowing that a percentage of his wages, up to $50, will be set aside by ADOC and deposited into his dedicated discharge account. Discharge from prison, not the date of the crime, is the event that causes payment of the inmate's gate money. Zuther was not released prior to the effective date of either § 31–237 or the amendments to § 31–228. He remained in prison well after these statutes had taken effect. The statutes, therefore, apply to him. The court of appeals opinion declining to apply the 1993 statutes to Zuther is vacated, and the judgment of dismissal entered by the trial court is reinstated for the reasons set forth in this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.

