Timothy Lee WARD, Plaintiff,

v.

Terry L. STEWART, Defendant.

No. CV 01–2226–PHX–ROS.

United States District Court,
D. Arizona.

Sept. 25, 2007.

Timothy Lee Ward, Florence, AZ, pro se.

Jeffrey Carl Warren, Snell & Wilmer LLP, Phoenix, AZ, for Plaintiff.

Susanna Carballo Pineda, Office of the Attorney General, Liability Management Section, Phoenix, AZ, for Defendant.

## ORDER

ROSLYN O. SILVER, District Judge.

Timothy Lee Ward, a prisoner of the Arizona Department of Corrections ("ADC"), seeks injunctive relief against ADC's Director (the "Director"), Dora Shriro,[1] for violations of his Fifth and Fourteenth Amendment rights not to be deprived of his property without just compensation or due process of law. For the reasons stated herein, the Court will deny injunctive relief.

---

**1.** Pursuant to Federal Rule of Civil Procedure 25(d)(1), Terry L. Stewart was substituted in his official capacity as Director of ADC by Dora Schriro.

## FACTUAL BACKGROUND

The facts are undisputed. Ward is serving a 197–year sentence in an ADC facility for twenty-two felony offences, including child molestation, sexual conduct with a minor, and furnishing obscene material. (Doc. 68).

Working prisoners, like Ward, are entitled to compensation at a rate to be determined by the prison director. A.R.S. § 31–254(A). This compensation is not paid directly to the prisoner; rather, minus certain deductions, it is placed into the inmate's spendable account. ADC Order 905, effective Sept. 5, 2000, available at http://www.azcorrections.gov/adc/policy_inclusion.asp?menuName=/all_includes/custom menus/do_m3.htm & fileName=/Policies/905.htm# 905.04 ("ADC Order"). The inmate only has access to his spendable account for certain enumerated purposes,[2] and then only upon approval by the deputy warden or his designee. ADC Order 905.04.

One of the mandatory deductions is for "gate money," which is money given to an inmate upon his release from prison or transfer to a community release status or to home arrest. A.R.S. § 31–237; ADC Order 905.10. A percentage of an inmate's wages is deposited into a dedicated discharge account until the account contains fifty dollars. A.R.S. § 31–237; ADC Order 905.10.

Fifty dollars has been so withheld from Ward's wages. (Doc. 68, Ex. D). Ward asserts that, because he will not be released from prison during his lifetime, the gate-money withholding is a taking of property without just compensation or due process of law, and he seeks an injunction ordering return of his fifty dollars.

## PROCEDURAL HISTORY

On November 14, 2001, Ward filed suit, *pro se*, against the Director pursuant to 42 U.S.C. § 1983, alleging denial of access to courts in violation of the Sixth Amendment. (Doc. 1). On August 26, 2002, Ward amended his complaint to add a Section 1983 claim that the withholding of gate money violated his Eighth Amendment rights. (Doc. 17).

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court dismissed the case for failure to state a claim on March 24, 2003. (Doc. 31). Ward appealed the dismissal. (Doc. 32). The Ninth Circuit upheld the dismissal of the access-to-courts claim, but reversed and remanded the due process claim.[3] (Doc. 35).

On December 17, 2004, the Director moved for summary judgment on the due process claim on the basis of qualified and sovereign immunity. (Doc. 67). Because the Court found the Director was entitled to qualified immunity, the Court granted summary judgment on Ward's due process claim to the extent it sought to impose personal liability on the Director. (Doc. 87). The Court also found that the Director was entitled to sovereign immunity for his official actions and granted summary judgment for Ward's due process claim to the extent that it sought damages. *Id.* The Court, however, did not grant summary judgment on the basis of sovereign immunity to the extent that Ward sought injunctive relief. *Id.* The Court considered dismissing the request for injunctive relief *sua sponte*, but ordered supplemental briefing of the issue. *Id.* The Court appointed attorney Jeffrey C. Warren to represent Ward for the limited pur-

---

**2.** These purposes include inmate store purchases, postage, copies, telephone calls, and magazine/newspaper subscriptions. ADC Order 905.04.

**3.** In its March 24, 2003 Order, the Court interpreted Ward's Eighth–Amendment claim as a due process claim. (Doc. 31). The Ninth Circuit did not disturb this interpretation. (Doc. 35).

pose of drafting and filing Ward's supplemental brief. (Doc. 97).

## STANDARD OF REVIEW

■ The Court may grant summary judgment *sua sponte* if: (1) the pleadings and supporting documents, viewed in the light most favorable to Ward, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c); and (2) Ward received reasonable notice that the adequacy of his claim was in question. *See Verizon Delaware, Inc. v. Covad Comm'n Co.*, 377 F.3d 1081, 1092 (9th Cir.2004); *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993).

Because all material facts are undisputed and Ward has had notice and the opportunity to submit a brief regarding the adequacy of his due process claim, the Court finds that resolution of this case at summary judgment is appropriate.

## ANALYSIS

### A. *Claims Alleged*

In his amended complaint, filed *pro se,* Ward asserted that the gate-money statute as applied to him violated his Eighth Amendment rights. The Court treated this claim as a due process claim.

For the first time in his supplemental brief, Ward alleges that, in addition to Ward's due process rights, the Director violated Ward's Fifth and Fourteenth Amendment right not to be deprived of his property without just compensation. (Doc. 98).

Because the allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court will consider the takings clause and due process claims. *See Tellis v. Godinez*, 5 F.3d 1314, 1315–16 (9th Cir.1993) (treating prisoner due process claim for withholding of interest earned on funds in his personal prison bank account as a takings clause claim). Because the Director had the opportunity to respond to Ward's taking clause claim in her supplemental reply brief, she will not be prejudiced by the Court's consideration of the taking clause claim. (*See* Doc. 99).

### B. *Takings Clause*

■ The Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. To establish a violation of the Takings Clause, Ward must demonstrate that: (1) he possesses a constitutionally protected property interest, and (2) there has been a taking of that property. *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir.2007). Protected property interests are creatures of common law or statute. *Phillips v. Wash. Legal. Found.*, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998); *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1199 (9th Cir.1998).

■ While Ward does not have a protected property interest in his wages at common law, *see Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), Arizona has created an interest by statute. Arizona state law provides that working inmates "*shall* receive for the prisoner's work the compensation that the director determines." A.R.S. § 31–254 (emphasis added). And the Supreme Court of Arizona has recognized that this statute cre-

ates a cognizable property interest in inmate wages. *Zuther v. State,* 199 Ariz. 104, 14 P.3d 295, 302 (2000). Thus, Ward has a constitutionally protected property interest in his wages.

While the Director concedes that Ward has a protected interest in his wages in general, the Director asserts that Ward does not have a protected interest in the $50 withheld pursuant to the gate-money statute because Ward's property interest in his wages is a creature of state law and state law does not create an interest in those particular funds.

*Schneider,* 151 F.3d 1194, however, prohibits the Court from solely looking at the state statute to determine the scope of Ward's property interest. In *Schneider,* an inmate challenged the California Department of Corrections' policy of collecting the interest earned on inmates' trust accounts and depositing those funds into the Inmate Welfare Fund, which funds are to be used for the benefit of all inmates under the jurisdiction of the California Department of Corrections. *Id.* at 1195–96. The Ninth Circuit expressly rejected "the conclusion that [the state statute] does not create a property interest in the inmates' interest income ends the constitutional inquiry." *Id.* at 1199.

Rather, the Ninth Circuit held that courts must also consider whether the asserted property right is "a 'core' notion of constitutionally protected property into which state regulation simply may not intrude without prompting Takings Clause scrutiny." *Id.* at 1200. Relying on *Webb's,* 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358, and *Phillips,* 524 U.S. 156, 118 S.Ct. 1925, the Ninth Circuit found that the interest-follows-principle rule was such a core notion of property law. *Id.* at 1199–1201. The Ninth Circuit, therefore, held that inmates had a constitutionally protected property interest in the interest earned on the funds in their trust ac-

counts, and that appropriation of the inmates' interest for the benefit of the inmate population as a whole triggered Takings Clause scrutiny in any interest earned. *Id.* at 1201.

■ There is no question that the gate money is the private property of Ward, and that the gate-money statute restricts his ability to access it. Outside of the prison context, "possession, control, and disposition" of private property may be deemed a core property right. *See Phillips,* 524 U.S. at 157, 170, 118 S.Ct. 1925. Inside the prison context, however, at common law, prisoners forfeited all right to possess, control, or dispose of private property. *See Calero–Toledo,* 416 U.S. at 682, 94 S.Ct. 2080. Therefore, the restriction on Ward's ability to access his gate money does not offend traditional notions of property law.

As such, there has not been an unconstitutional taking of Ward's wages under the gate-money statute.

## C. Due Process

■ "Prisoners claiming a due process violation under the Fourteenth Amendment must demonstrate that they have been deprived of a protected liberty or property interest by arbitrary government action." *McKinney v. Anderson,* 924 F.2d 1500, 1510 (9th Cir.1991), vacated on other grounds by sub. nom., *Helling v. McKinney,* 502 U.S. 903, 112 S.Ct. 291, 116 L.Ed.2d 236 (1991); *see also Meachum v. Fano,* 427 U.S. 215, 226–27, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Harris v. Jacobs,* 621 F.2d 341, 342 (9th Cir.1980).

■ Even assuming that Ward has a protected property interest in his gate money, the withholding of the funds pursuant to the gate-money statute was not arbitrary. Gate money promotes public welfare and the common good by aiding

inmates' integration into society and removing the immediate temptation to acquire needed funds through illegal means. *See Zuther,* 14 P.3d at 301. In an attempt to provide funding for that money, Arizona law reasonably provides that working inmates must contribute a percentage of their income, up to $50.00, into a dedicated discharge account.

Application of the gate-money statute to prisoners sentenced to life imprisonment is not arbitrary for two reasons. First, due to myriad of reasons, prisoners sentenced to life imprisonment can be released prior to expiration of their natural life. For example, they could secure release due to reversal of conviction and/or sentence by appeal; they could be granted a reprieve, commutation, or pardon, A.R.S. Const. Art. 5 § 5; or their sentence could be reduced by subsequent law, *McDonald v. Thomas,* 202 Ariz. 35, 40 P.3d 819, 830 (2002) (reducing life sentence without the possibility of parole to term of 8.5 years under the Disproportionality Review Act, 1994 Ariz. Sess. Laws, Ch. 365, sec. 1, and discharging prisoner from custody).

Second, if the inmate dies in prison, the gate money is applied toward costs accrued in association with his cremation or other related expenses, and any remaining funds will inure to his estate. ADC Order 711.05, effective February 20, 2007, available at http: //www.azcorrections.gov/adc/ policy inclusion.asp?menuName=/all_includes/custom menus/do_m2.htm & fileName/Policies/711.htm# 711.05.

Thus, it was not arbitrary for the Arizona legislature to enact the gate-money statute, nor to apply it to Ward, though at the present time he is scheduled to be in custody for 197 years beginning on the date he was sentenced.

### CONCLUSION

Having determined that (1) there is no genuine issue as to any material fact, (2)

Ward received reasonable notice that the adequacy of his claim was in question, and (3) the Director is entitled to judgment as a matter of law because Ward cannot demonstrate that either his right not to be deprived of his property without just compensation and/or his right to due process of law was violated.

**IT IS ORDERED** that:

1. The Joint Motion for Status/Ruling on Plaintiff's Request for Injunctive Relief (Doc. 110) is **GRANTED**.

2. Plaintiff's request for injunctive relief is **DENIED**.

3. The Clerk of Court shall enter a judgment in favor of Defendant, and terminate this case.