IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Respondent*,

*v.*

MARCOS ISAAC DANNER,
*Petitioner*.

No. 2 CA-CR 2025-0126-PR
Filed October 22, 2025

———————————————

Petition for Review from the Superior Court in Pima County
No. CR20234992001
The Honorable Kathleen A. Quigley, Judge

**REVIEW GRANTED; RELIEF GRANTED**

———————————————

COUNSEL

Laura Conover, Pima County Attorney
By J. William Brammer Jr. and James W. Rappaport, Tucson
*Counsel for Respondent*

Megan Page, Pima County Public Defender
By Ian M. McCloskey, Assistant Public Defender, Tucson
*Counsel for Petitioner*

---

**OPINION**

---

Judge Eckerstrom authored the opinion of the Court, in which Chief Judge Staring and Vice Chief Eppich concurred.

---

E C K E R S T R O M, Judge:

**¶1**        Marcos Danner seeks review of the trial court's order summarily dismissing his petition for post-conviction relief filed pursuant to Rule 33, Ariz. R. Crim. P.  We grant review, and, because the court erred in rejecting Danner's claim under Rule 33.1(h), we grant relief.

**¶2**        In March 2024, Danner pled guilty to solicitation to possess a deadly weapon by a prohibited possessor based on his possession of a firearm in November 2023.  The trial court suspended the imposition of sentence and placed Danner on a three-year term of probation.

**¶3**        Danner sought post-conviction relief, arguing his conviction violates the Second Amendment to the United States Constitution because "there is no historical tradition of disarming similarly situated non-violent offenders," citing *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).  He later filed an amended petition adding a claim under Rule 33.1(h) that he was not, in fact, a prohibited possessor on the date of the offense because his right to possess a firearm had been automatically restored under A.R.S. § 13-907(A) based on amendments to that statute effective in September 2022.  He explained that he had been convicted in 2020 of solicitation to commit organized retail theft—a nondangerous and nonserious offense, *see* A.R.S. §§ 13-706, 13-704—and that he thus met the criteria for automatic reinstatement under the current version of § 13-907(A).  In response, the state acknowledged that Danner's probation term in the retail theft case had ended in 2021 but argued that the automatic restoration provisions of § 13-907(A) did not apply because his probation had ended before the statute was amended and the statute was not expressly retroactive.

**¶4**        The trial court summarily dismissed Danner's petition.  It concluded he had waived his constitutional challenge by pleading guilty and that the amendment to § 13-907(A) was not retroactive.  As to the latter, the court reasoned that the amendment to § 13-907(A) was substantive—as

opposed to procedural, which may be applied retroactively—because it would require "a reversal of convictions for prohibited possessors in qualifying cases."  The court also denied Danner's motion for rehearing. This petition for review followed.

**¶5**　　　　On review, Danner reurges his claims.  Because we agree that his right to possess a firearm was automatically restored when the amendments to § 13-907 took effect, he is entitled to relief under Rule 33.1(h), and we need not reach his constitutional arguments.

**¶6**　　　　At the time Danner completed his probation in 2021, § 13-907(A) provided that, "[o]n final discharge, any person who has not previously been convicted of a felony offense shall automatically be restored any civil rights that were lost or suspended as a result of the conviction if the person pays any victim restitution imposed."  2022 Ariz. Sess. Laws, ch. 199, § 2.  Subsection (C) excluded the right to possess a firearm from the automatic restoration of rights, providing a defendant could instead apply for restoration pursuant to A.R.S. § 13-910.

**¶7**　　　　As amended, § 13-907(A) provides that the automatic restoration of rights is triggered "[o]n completion of probation . . . or absolute discharge from imprisonment."  And the statute now allows for the automatic restoration of the right to possess a firearm unless the underlying offense was dangerous or serious.  § 13-907(C).  The question before us, then, is whether that amendment applies to an individual—like Danner—who completed probation before the amended statute's effective date in September 2022 but would unquestionably qualify for the automatic restoration of the right to possess a firearm if he had completed it later.[1]

**¶8**　　　　We review issues of statutory construction de novo.  *In re Chalmers*, ___ Ariz. ___, ¶ 12, 571 P.3d 885, 888 (2025).  "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use.  We do so neither narrowly nor liberally, but rather

---

[1]It is undisputed that Danner was a prohibited possessor before the statute was amended and would not have been permitted to possess a firearm before the statute's effective date.  A defendant is held to the law in effect at the time the crime was committed.  *See State v. Hamilton*, 177 Ariz. 403, 406 (App. 1993) ("In the context of criminal law, an offender must be punished under the law in force when the offense was committed and is not exempted from punishment by a subsequent amendment to the applicable statutory provision.").

according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *Id.* (quoting *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, ¶ 31 (2023)).

¶9        Danner argues that he need not demonstrate that the amended statute operates retroactively because the revisions to § 13-907(A) changed his status—from a prohibited possessor to a person with restored Second Amendment rights—prospectively from 2022 onward. The state, conversely, asserts that because Danner's constitutional rights were automatically restored—save his right to possess a firearm—when his probation terminated in 2021, the 2022 amendments to § 13-907(A) do not apply to him unless we conclude the statute operates retroactively.

¶10       "A statute applies retroactively when it 'attaches new legal consequences' to events completed before the effective date of the statute." *Zuther v. State*, 199 Ariz. 104, ¶ 15 (2000) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70 & 270 (1994)). But "[a] statute is not necessarily retroactive because it 'relate[s] to antecedent facts.'" *Id.* ¶ 17 (first alteration added, second alteration in *Zuther*) (quoting *Tower Plaza Invs. Ltd. v. DeWitt*, 109 Ariz. 248, 250 (1973)). A substantive statute may not be applied retroactively absent an express directive by the legislature. *Krol v. Indus. Comm'n of Ariz.*, 259 Ariz. 261, ¶ 25 (2025); A.R.S. § 1-244. But a procedural statute has no such restriction if it "does not affect an earlier established substantive right." *In re Shane B.*, 198 Ariz. 85, ¶ 8 (2000) (quoting *Bouldin v. Turek*, 125 Ariz. 77, 78 (1979)); *see also Krol*, 259 Ariz. 261, ¶ 31.

¶11       Much of Danner's argument centers on this court's decision in *State v. Nixon*, 242 Ariz. 242 (App. 2017). There, the defendant asserted that his right to possess a firearm was not automatically suspended under A.R.S. § 13-904(A)(5) because that provision was added in 1994, several years after his 1987 conviction. *Nixon*, 242 Ariz. 242, ¶ 1. The statute provides that "[a] conviction for a felony suspends" certain "civil rights of the person sentenced." § 13-904(A). The 1994 amendment added to the list of suspended rights "[t]he right to possess a . . . firearm." 1994 Ariz. Sess. Laws, ch. 200, § 5.

¶12       Nixon argued that applying § 13-904(A)(5) to him was an improper retroactive application of the law. *Nixon*, 242 Ariz. 242, ¶ 1. We determined, however, that it was not necessary for the statute to be retroactive to suspend Nixon's right to possess a firearm. *Id.* ¶¶ 1, 8. His conviction was not the trigger for the suspension of his gun rights but instead merely an antecedent fact, and the statute did "not change the consequences of Nixon's past acts." *Id.* ¶ 7. Instead, "[t]he only effect that

the statute had on Nixon was to change his status as a felon to a prohibited possessor from 1994 onward." *Id.* ¶ 8. Thus, we concluded, the statute "prospectively applies to convicted felons who had yet to have their civil rights restored when it became effective, regardless whether the conviction occurred before or after its effective date." *Id.*

¶13 Danner interprets *Nixon* to mean that "statutes related to the loss of rights and restoration of rights upon conviction" apply prospectively "at the moment the statute becomes effective," regardless of when the conviction occurred. We agree that much of *Nixon*'s reasoning applies here. Section 13-907(A) refers to a specific event—the completion of probation or absolute discharge from imprisonment—to trigger the automatic restoration of rights. But, under *Nixon*, that does not necessarily mean the statute is improperly retroactive if that event has already occurred. As noted above, § 13-904(A) also refers to a specific triggering event—the conviction for a felony. Nonetheless, the addition of subsection (A)(5) suspending the right to possess a firearm did not alter the legal consequences of that previous event.

¶14 The state correctly observes, however, that Danner's rights had already been restored at the time the statutory amendments took effect, unlike Nixon's. It focuses on the statement in *Nixon* that the modified statute applies only to "convicted felons who had yet to have their civil rights restored." *Id.* According to the state, then, the key event is not the effective date of the statute but the restoration of rights. But the state's argument overlooks the difference between § 13-904(A) and § 13-907(A). The former suspends rights, and the latter explains how they are restored. It is one thing to conclude the legislature may restore additional rights to a felon whose rights have already been partially restored. It is another to conclude the legislature may again suspend the rights of a felon whose rights have been restored.

¶15 Additionally, the state's interpretation could lead to arbitrary results, as the following hypothetical illustrates. Two defendants convicted of identical crimes are subsequently placed on identical probation terms, which would begin before the effective date of the revisions to § 13-907(A) and end afterwards. The first defendant, however, is terminated from probation early under Rule 27.4, Ariz. R. Crim. P. The other is not. According to the state, only the second defendant would automatically regain the right to possess a firearm. We cannot agree Arizona law compels this outcome.

**¶16**      Even were we to read the amendment to § 13-907(A) as creating new legal consequences, that is, the restoration of Danner's right to possess a firearm, based on events completed before the amendment—his completion of probation, *see Zuther*, 199 Ariz. 104, ¶ 15, we would nonetheless conclude Danner is entitled to relief. As noted above, the presumption against retroactivity applies only to statutes affecting vested substantive rights. "Substantive law creates, defines and regulates rights." *Krol*, 259 Ariz. 261, ¶ 32 (quoting *Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 12 (2000)). "Conversely, a procedural law 'prescribes the method of enforcing such rights or obtaining redress.'" *Id.* (quoting *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 138 (1986)). In other words, a "procedural law relates to the manner and means by which a right to recover is enforced or provides no more than the method by which to proceed." *Aranda*, 198 Ariz. 467, ¶ 12. In the criminal context, a law is substantive if it defines a crime or the parameters of punishment. *Carson v. Gentry*, ___ Ariz. ___, ¶ 78, 574 P.3d 205, 221 (2025).

**¶17**      Section 13-907(A) neither creates nor defines the right to possess firearms. Nor does it regulate that right—§ 13-904(A)(5) mandates the suspension of the right to possess firearms. Section 13-907, in contrast, provides the procedure for restoring those rights. Under subsection (A), the rights are restored automatically to qualified defendants, and the statute refers defendants who do not meet its requirements to appropriate additional procedures. *See* § 13-907(B), (D). Moreover, the suspension of the right to possess a firearm is not punishment. *See State v. Olvera*, 191 Ariz. 75, 77 (App. 1997). It instead reflects a legislative determination of "unfitness to engage in the future activity of possession of a firearm." *Id.* Thus, because § 13-907(A) does not create, define, or regulate rights nor punish defendants, it is procedural, and there is no barrier to applying its amendment retroactively to those who completed their probation before the amendment's effective date.

**¶18**      Danner's right to possess a firearm was restored automatically on the effective date of the amendments to § 13-907(A), September 24, 2022. Thus, he was not prohibited from possessing a firearm on the date of his arrest in November 2023. He is entitled to relief under Rule 33.1(h).

**¶19**      We grant review and relief. We direct the trial court to enter an order vacating Danner's conviction for solicitation to commit prohibited possession and the resulting disposition.