NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant,*

*v.*

LARRY BECENTI BEGAY, *Appellee,*

STATE OF ARIZONA, *Appellant,*

*v.*

DANIEL LUKE ERICKSON, *Appellee.*

No. 1 CA-CR 25-0107
No. 1 CA-CR 25-0108
(Consolidated)

FILED 01-16-2026

Appeal from the Superior Court in Maricopa County
No. CR2024-151042-001
No. CR2024-141416-001
The Honorable Justin Beresky, Judge
The Honorable Todd F. Lang, Judge

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Johnny Jacquez
*Counsel for Appellant*

Maricopa County Public Defender's Office, Phoenix
By Joshua Messick
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

---

**J A C O B S**, Judge:

¶1  The State appeals the superior court's dismissals of its criminal cases against Larry Begay and Daniel Erickson for illegally possessing firearms. The State argues their firearm rights were not automatically restored when they completed probation for their felonies in January 2023 and November 2022, respectively. Because the September 24, 2022 amendment to A.R.S. § 13-907 (the "2022 Amendment") automatically restored their firearm rights when they completed probation, we affirm.

**FACTS AND PROCEDURAL HISTORY**

A.  **The Parties' Felony Convictions and Probation Terms**

¶2  Begay and Erickson were each convicted of a single felony. Begay pled guilty in 2021 to Aggravated Driving Under the Influence, a class 4 non-dangerous felony arising from a 2017 offense. The court imposed a three-year term of supervised probation. Erickson pled guilty in 2021 to possession of drug paraphernalia, a class 6 undesignated felony arising from a 2019 offense. The court imposed an eighteen-month term of probation. Because of these convictions, A.R.S. § 13-904(A) prohibited both Begay and Erickson from possessing firearms.

B.  **The Legislature Amended A.R.S. § 13-907 in 2022.**

¶3  While both defendants were on probation, the Legislature enacted House Bill 2119, which amended A.R.S. § 13-907 effective September 24, 2022. 2022 Ariz. Sess. Laws ch. 199, § 2 (2nd Reg. Sess.). The 2022 Amendment provided qualifying first-time felony offenders would automatically have their firearm rights restored "on completion of probation." *Id.* The 2022 Amendment also eliminated the provision of A.R.S. § 13-910 that required felony offenders to wait two years before their firearm rights are restored. *Id.* at § 3.

2

**C.** **After the 2022 Amendment Was Effective, Begay and Erickson Completed Their Probations and Possessed Firearms, Leading the State to Charge Them With Misconduct Involving Weapons.**

**¶4** Begay was discharged from probation in January 2023. Erickson was discharged from probation in November 2022. Neither defendant owed any victim restitution, and neither sought a court order restoring firearm rights. Subsequently, both acquired firearms. In 2024, the State separately charged both defendants with Misconduct Involving Weapons, Class 4 felonies, alleging they knowingly possessed firearms while being prohibited possessors.

**D.** **The Court Grants the Defendants' Motions to Dismiss Their Criminal Cases.**

**¶5** Begay and Erickson each moved to dismiss their cases under Arizona Rule of Criminal Procedure ("Rule") 16.4(b), arguing that A.R.S. § 13-907, as amended, automatically restored their firearm rights "[o]n completion of probation," so they were not prohibited possessors of firearms. The State argued the 2022 Amendment could not apply because each defendant's underlying offense and conviction predated the statute's effective date.

**¶6** The superior court rejected the State's position and granted both motions to dismiss, concluding A.R.S. § 13-907 applies to all defendants who completed probation after September 24, 2022, regardless of when their crimes were committed or sentences imposed. The State timely appealed both matters. This Court consolidated the appeals. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-2101(A)(1), 13-4031.

## DISCUSSION

**¶7** We review a superior court's "ruling on a motion to dismiss based on the insufficiency of the indictment for an abuse of discretion." *State v. Holmes*, 250 Ariz. 311, 313 ¶ 5 (App. 2020). But a "court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *Nowell v. Rees*, 219 Ariz. 399, 403 ¶ 11 (App. 2008) (quoting *Taylor v. Cruikshank*, 214 Ariz. 40, 43 ¶ 10 (App. 2006)). We review questions of statutory interpretation *de novo*. *Holmes*, 250 Ariz. at 313 ¶ 5; *State v. Acuna Valenzuela*, 245 Ariz. 197, 211 ¶ 34 (2018).

**I.    The Plain Language of A.R.S. § 13-907 Unambiguously Provides That Begay's and Erickson's Firearm Rights Were Restored.**

¶8        Courts must apply the plain language of a statute when interpreting its meaning. *Southern Arizona Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023). Only if the text is ambiguous do we resort to other methods of interpretation. *Desert Mountain Energy Corp. v. City of Flagstaff*, 259 Ariz. 346, 339 ¶ 20 (App. 2025).

¶9        After the 2022 Amendment, A.R.S. § 13-907(A) provides:

> On completion of probation for an offense committed in this state or absolute discharge from imprisonment, any person who has not previously been convicted of a felony offense shall automatically be restored any civil rights that were lost or suspended as a result of the conviction if the person pays all victim restitution imposed. A person who is entitled to the restoration of any civil rights pursuant to this subsection is not required to file an application pursuant to section 13-908, except that if the person does file an application, the court shall grant the application without receiving a response from the state or holding a hearing.

A.R.S. § 13-907(A).

¶10        The statute does not tie restoration of a person's firearm rights to the date of their offense, conviction, or sentencing. *Id.* It conditions restoration instead on completion of probation or absolute discharge, including payment of all victim restitution imposed. *Id.*

¶11        Begay and Erickson both completed probation after September 24, 2022. And both paid all victim restitution owed. The plain language of the statute dictates that their firearm rights were restored. *Id.* Accordingly, neither defendant was a prohibited possessor under A.R.S. § 13-3101(A)(7)(b) when the State charged them with Misconduct Involving Weapons. The superior court correctly dismissed these charges.

4

## II.    A.R.S. § 13-907 Operates Prospectively.

### A.    Arizona's Strong Presumption Against Retroactivity Supports a Prospective Reading of A.R.S. § 13-907.

¶12        The State argues that the plain language of A.R.S. § 13-907 does not make it retroactive, so we must construe the statute to avoid its retroactive operation here.  The State is correct that our law disfavors retroactivity.  *See* A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein.").  But the State's argument fails because the 2022 Amendment did not make the statute operate retroactively, as applied to Begay and Erickson.

¶13        In determining whether a statute is being applied retroactively, courts ask whether "it 'attaches new legal consequences' to events completed before [its enactment]" and must first identify the relevant "completed event."  *Zuther v. State*, 199 Ariz. 104, 109 ¶ 15 (2000) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)).  If the statute's text clearly identifies that operative event and does not purport to reach earlier, completed events, courts simply apply the statute according to its ordinary meaning.  *See id.*

¶14        Here, the relevant "completed event" is the end of both defendants' probations (which occurred after the 2022 Amendment), not their convictions (which occurred before the 2022 Amendment).  That means A.R.S. § 13-907 is not retroactive:  it operates prospectively, because it creates legal consequences only from its effective date forward.  Just as *Zuther* held that the relevant "completed event" for retroactivity analysis of a statute altering the source of payment of "gate money" to be paid to exiting prisoners was an inmate's release from prison, not the date of his crime, the completed event here is Defendants' completion of probation, which occurred after the amendment took effect.  *Zuther*, 199 Ariz. at 109-10 ¶¶ 15–17.

¶15        Under the statute, if an individual completed probation before the 2022 Amendment's effective date, their civil rights would be automatically restored on the effective date.  *State v. Danner*, ___ Ariz. ___, 2025 WL 2970551, at *4 ¶ 18 (App. 2025).  And where, as here, probation was completed after the amendment took effect, restoration occurs on the date probation was completed.  *See State v. Chester*, No. 2 CA-CR 2025-0124-PR, 2025 WL 2587386, at *2 ¶¶ 7-8 (Ariz. App. Sept. 5, 2025) (mem. decision) (holding the defendant remained a prohibited possessor where he was arrested with a firearm nineteen days before the 2022 Amendment took

effect, because his rights could not have been automatically restored until the amendment's effective date). In both scenarios, the statute applies prospectively because it does not alter the legal consequences of any event occurring before the amendment. *See State v. Nixon*, 242 Ariz. 242, 243 ¶ 1 (App. 2017). Because Begay and Erickson completed probation after September 24, 2022, their rights were automatically restored upon completion of their probation.

### B. A.R.S. § 13-907 Is a Procedural Civil Rights Statute, Not a Substantive Sentencing Statute.

¶16 The State argues the 2022 Amendment can only apply to offenses committed after its September 24, 2022 effective date absent an express retroactivity clause, because it effectively re-sentences Begay and Erickson. Begay and Erickson argue that mischaracterizes A.R.S. § 13-907, which is a procedural, remedial civil rights statute that governs rights-restoration after a sentence is complete, not a provision that reopens or alters the original sentence. Begay and Erickson are correct.

¶17 Arizona law squarely rejects the State's premise that an adjustment to one's civil rights status is a retroactive change in punishment. In *State v. Olvera*, the defendant argued that 1994 amendments to A.R.S. §§ 13-904(A) and 13-3101 — which rendered him a prohibited possessor — impermissibly added punishment for his earlier felony convictions. 191 Ariz. 75, 76 (App. 1997). We rejected that argument. *Id.* at 77. To the contrary, we held the amendments were applied prospectively to punish only post-amendment possession and did not impose additional punishment for the defendant's past crimes. *Id.* Critically, *Olvera* explained that the statute "merely changed his status to a 'prohibited possessor felon,'" and that the resulting firearm prohibition served public-safety purposes, not penal ones. *Id.* Far from viewing status-based firearm restrictions as retroactive sentencing changes, *Olvera* characterizes them as prospective regulatory consequences. *Id.*

¶18 We reaffirmed that principle in *Nixon*, which involved a defendant whose conviction predated amendments to A.R.S. § 13-904(A)(5). *Nixon*, 242 Ariz. at 243 ¶ 1. We held that applying A.R.S. § 13-904(A)(5) to a pre-amendment conviction "does not change the consequences of [the defendant's] past acts[,]" but rather "relates to conditions that existed in 1994"—namely, the defendant's ongoing status as a felon whose rights had not been restored. *Id.* at 244 ¶ 7. The statute therefore "prospectively applies to convicted felons who had yet to have their civil rights restored when it became effective, regardless [of] whether

the conviction occurred before or after its effective date." *Id.* at 244 ¶ 8. This is precisely the situation here, as both defendants' civil rights were prospectively restored when they completed their probation in November 2022 and January 2023.

**¶19**      Applying *Olvera* and *Nixon*, we reject the State's theory that A.R.S. § 13-907 applies only to offenses committed after the amendment. If the Legislature's choice to suspend firearm rights after a felony conviction is a prospective, regulatory consequence based on a person's status, and not an impermissible retroactive increase in punishment, then the Legislature's choice to restore those same rights automatically upon completion of probation must also be treated as a prospective, status-based consequence. Furthermore, A.R.S. § 13-907 neither defines criminal conduct nor modifies sentencing ranges. It simply prescribes the procedure and timing by which a person's civil rights status is updated once they have fully served their felony sentences. *Danner*, 2025 WL 2970551, at *4 ¶ 17.

**¶20**      This court confirmed this understanding in *Danner*, holding that A.R.S. § 13-907 is a procedural statute governing the method of restoring civil rights, not a substantive change to criminal punishment. *Id.* *Danner* applied the same principle we recognized in *Nixon* — that the operative question is whether the triggering event (completion of probation or absolute discharge) occurs after the statute's effective date, not when the underlying conviction occurred. *Id.*

**¶21**      Thus, the State's argument that applying A.R.S. § 13-907 amounts to a retroactive modification of punishment is inconsistent with our precedent. Firearm-rights disability and restoration statutes operate prospectively based on a defendant's post-sentence status, not retroactively based on the date of the offense. A.R.S. § 13-907 fits squarely within that settled framework and the superior court correctly applied the statute to defendants whose civil rights status changed once they completed their probation.

### III.    The State's Argument That the Court's Application of A.R.S. § 13-907 Leads to Absurd and Irrational Results Fails.

**¶22**      The State also argues that the superior court's interpretation of A.R.S. § 13-907 "leads to absurd and irrational" results. The State contends that under the superior court's logic, sentencing law would no longer be "fixed" at the date of offense and that noncompliant probationers or more serious offenders would receive "automatic immediate

restoration" of firearm rights while compliant probationers and less serious offenders would not.

**¶23**      Begay and Erickson respond that the State's interpretation rests on a misreading of the statute and does not justify departing from A.R.S. § 13-907's plain language. They emphasize that automatic restoration applies only to individuals who (1) have a single prior felony conviction, (2) were not convicted of a dangerous or serious offense, (3) have paid all victim restitution, and (4) have completed probation or been absolutely discharged from imprisonment. A.R.S. § 13-907(A), (C). Because dangerous and serious offenders are categorically excluded, defendants argue there is no "windfall" for "more serious" offenders whose sentences extend past the 2022 Amendment's effective date, as the State contends.

**¶24**      The State's policy concerns do not justify departing from the statute's plain text. *See State v. Wilson*, 200 Ariz. 390, 396 ¶ 14 (App. 2001) ("[W]e do not begin our statutory analysis by examining the general 'purpose' of a statute and then determining whether public policy concerns support application of the statute in particular factual circumstances. We must begin by examining the actual language of the statute. If that language is unambiguous, we must apply the statute as written." (quoting *People v. Childs*, 243 Mich. App. 360, 367 (2000))). A.R.S. § 13-907 does not alter the punishment imposed for the underlying crime; it governs only post-sentence restoration of civil rights. As *Zuther* and *Nixon* confirm, a statute is not retroactive merely because it relates to antecedent convictions. *Zuther*, 199 Ariz. at 109 ¶ 17; *Nixon*, 242 Ariz. at 244 ¶ 7. The penalties for Begay's and Erickson's prior offenses were fixed when those offenses occurred. Automatic restoration of their civil rights under A.R.S. § 13-907 did not change their punishment at sentencing retroactively.

**¶25**      We also reject the State's argument that we should not apply the statute's plain text because it rewards "noncompliant" probationers who end up completing probation later than "compliant" probationers. Our job is to apply the statute, and whether probationers subject to the statute had difficulties finishing probation or not, all probationers subject to the statute receive restoration by operation of law. Probationers still serving probation or imprisonment on September 24, 2022, who fully complete their sentence and pay all outstanding restitution after September 24, 2022, have their firearm rights restored as of their completion date. A.R.S. § 13-907 uniformly applies to all qualifying first-time offenders.

**¶26**      Nor does the State show absurdity. A.R.S. § 13-907 applies uniformly to a narrow class of first-time, non-dangerous, non-serious

offenders who have paid restitution and completed their probation or been absolutely discharged from imprisonment.  A.R.S. § 13-907(A), (C).  By its terms, both "compliant" and "noncompliant" probationers receive restoration by operation of law.  Any policy concerns this implicates are for the Legislature, not us.

**CONCLUSION**

¶27          We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR